*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Andrea L. Smith
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4858
MAIN: 410-209-4800
FAX: 410-962-9293
TTY/TDD: 410-962-4462
Andrea.Smith@usdoj.gov

August 30, 2011

Steven H. Sacks, Esquire
1017 N. Calvert Street
Baltimore, Maryland 21202

      Re: United States v. Roger Francel Evans, Jr.
          Criminal Number: L-11-034.

Dear Mr. Sacks:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by September 8, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

      1.     The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with Conspiracy to Distribute and Possess with the intent to Distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

      2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

              1. THAT, on the dates alleged in the indictment, the Defendant did knowingly and unlawfully conspire with at least one other person;

              2. THAT, the purpose of the conspiracy was to distribute and possess with

Revised 11/5/09

the intent to distribute 500 grams or more of cocaine, a Schedule II controlled substance.

## Penalties

3.   The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a minimum mandatory 5 years up to and including 40 years incarceration, including maximum term of supervised release of up to five years and at least four years, and a maximum fine of up to $5,000,000.00. The defendant also understands because of a prior felony narcotic conviction, the sentence increases to a minimum mandatory 10 years up to and including life imprisonment, including maximum term of supervised release of up to five years and at least four years, and a maximum fine of up to $8,000,000.00. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.   The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.   If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.   If the Defendant went to trial, the government would have the burden

---

[1]   Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

    5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The parties agree that the base offense level for the offense is **level 26**, pursuant to U.S.S.G. §2D1.1(c) (7), because the amount of cocaine was more than 500 grams but less than 2 kilograms. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The resulting offense level is **level 23.**

7. The Defendant understands that because of a prior felony narcotic conviction, he subject to a mandatory minimum of ten years imprisonment.

8. This Office and the Defendant agree that with respect to the calculation of criminal history, the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

### Guidelines Factors Not Stipulated

9. This Office and the Defendant agree that there are no facts and/or sentencing guidelines factors in dispute.

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend a sentence within the advisory guidelines range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Forfeiture

12. The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of any and all property sought by the government as identified in the "Notice of Forfeiture" contained in the indictment. At sentencing, the government will prepare an order of forfeiture to the Court identifying any and all property to be forfeited that is identified in the "Notice of Forfeiture" contained in the Indictment. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

13. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Waiver of Further Review of Forfeiture

14. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a)    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b)    The Defendant and this Office knowingly waive all right, pursuant to

18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **120** months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **120** months' imprisonment.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the

Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Andrea L. Smith
A. David Copperthite
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_9/27/11_  _____
Date                   Roger Francel Evans, Jr.

I am Roger Francel Evans, Jr.'s attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_9/27/11_  _____
Date                   Steven H. Sacks, Esquire

**United States v. Roger Francel Evans, Jr.,**
L-11-034
**Attachment A**
**Statement of Facts**

### STIPULATED STATEMENT OF FACTS

*The United States of America, and the defendant, Roger Francel Evans, Jr., through counsel, stipulate and agree that if this matter were to proceed to trial, the government would prove the following facts beyond a reasonable doubt:*

1. On December 7, 2010, local law enforcement in Frederick County, Maryland began intercepting communications over two telephones used by the defendant, ROGER EVANS. EVANS was intercepted speaking with various customers including co-defendant Lamont Young, about prices for various drugs including kilograms of cocaine and grams of cocaine base, also known as "crack." The interceptions were conducted pursuant to a court wiretap authorization. These calls and other evidence established that EVANS was engaged in a conspiracy with others to distribute more than 500 grams of cocaine. It was reasonably foreseeable to the defendant that at least 500 grams, but less than two kilograms of cocaine would be distributed in furtherance of the conspiracy.

2. On December 11, 2010, at approximately 1:20 pm, while EVANS was in southern Florida, EVANS was contacted by "Eddie" in Hagerstown, Maryland, believed to be a customer. EVANS and Eddie agreed to a narcotics transaction. EVANS then called a female identified as Tyanna Oram and asked her to "make a move for him." Specifically EVANS asked Oram to take a trip to Eddie, deliver some drugs, and pick up cash. EVANS advised that Oram from the cash given to her from Eddie, he needed her to wire some cash to him. Arrangement were made for a cab to drive Oram to Eddie in Hagerstown. Agents surveilled Oram leave her house in a cab, and when the cab got onto I-70 west leaving Frederick, agents stopped the cab. Agents seized the

bag that Oram had carried into the cab and recovered inside, was 86 grams of marijuana in 210 containers, 117 grams of crack cocaine in three baggies and $958 in cash. Oram was not arrested. Afterward, Oram called EVANS and reported to him what had happened. EVANS later complained that it was "six thousand dollars gone." EVANS then instructed Oram to make sure everything was "super super duper clean," and that everything he had in there "got to go."

3. On December 12, 2010, EVANS spoke with a source of supply. EVANS advised the source that he needed "two" but did not have all the money together at that time. Agents believed "two" to mean two kilograms of cocaine. The source explained that the drugs would be available by the next day but the money had to be straight. Agents understood this to mean that the source would not front it to EVANS, and that EVANS needed to pay all the money up front. In following intercepted conversations, EVANS agreed to meet Young at the IHOP restaurant around 11:30 am on December 13, 2010. EVANS' source did not want to meet Young. EVANS agreed with his source to leave his, (EVANS'), van unlocked behind the IHOP. The source would then retrieve money, representing partial payment, out of EVANS' van, leave the drugs in the van, and lock the van. Following that, EVANS would give Young his supply of cocaine, a half kilogram, and Young would pay EVANS $17,000. EVANS would then pay that $17,000 to his source.

4. On December 13, 2010, at approximately 11:20 a.m., agents observed EVANS, operating a black Dodge Van, arrive at the IHOP where Young was already waiting. While waiting for the source to deliver the cocaine, EVANS made arrangements to have more cash brought to him at the IHOP, which he then placed into his van. At approximately 11:50 a.m., while EVANS and Young were inside the IHOP, agents observed an unknown male walk up to EVANS' van, enter the unlocked van and get inside. This unknown male remained in the van for

approximately 2 or 3 minutes, got out of the van, and left the area on foot.

5. At approximately noon, Young left the IHOP restaurant, got into his Chevy Tahoe and drove to a nearby gas station. EVANS approached his van and was immediately arrested. Inside the van agents recovered 1.18 kilograms of cocaine and approximately 98 grams of marijuana. (These items were submitted for analysis and found in fact to be cocaine and marijuana.) Young was arrested at the gas station. In Young's vehicle, agents recovered $17,048.00 in U.S. Currency. Agents intercepted calls from the Frederick County Adult Detention center and heard EVANS direct someone to deliver something to his baby mother's house. Agents intercepted that delivery and seized $28,000 concealed in a safe. Agents seized the defendant's 2000 Dodge Van, Md Tag. 50X087, VIN 2B6HB11X3YK105550 which he used to conduct this offense.

6. This is only a summary of the events as they relate to the defendant, Roger Francel Evans, Jr., in support of the guilty plea, and is not intended to cover all of the details of the investigation.

_____  11/18/2011
Roger Francel Evans, Jr.        Date

WE ASK FOR THIS:

_____
Andrea L. Smith
Assistant United States Attorney


_____
Roger F. Evans, Jr.
Defendant

_____
Steven H. Sacks, Esq.
Attorney for the Defendant

-4-